Good morning. Mark Burnford, the appellant, Aaron Hicks. I reserve two minutes for rebuttal. May it please the court, the crux of this appeal is whether an objective observer would doubt the impartiality of the presiding judge in light of an affidavit from a juror indicating and asserting ex parte communication in addition to inherent bias. And whether this affidavit that was provided by this juror in the underlying timing of the filing warrants recusal by the presiding judge. Can I ask you, I feel like that is a really important question, but there's a threshold question which is whether we actually have appellate jurisdiction yet to review this decision or whether we have to wait for a final decision on the pending motions. So yes, and the government did file under 28 J an informal letter indicating the same and obviously the parties have an opportunity in order to brief on this particular matter. There's certainly parallels with regards to some of the outstanding motions that are pending in the district court. The district judge right now has held them in abeyance until there's direction from this court. So with regards to, there's certain relief that's obviously different. It's not replicating the same motions that are currently pending. Right, so but typically, certainly in the prejudgment context, a motion to, for a judge to recuse, it's an interlocutory motion and a ruling on that, unless it's specially certified, is an interlocutory order that merges with the final order. So if at the end of the day the court denied, they lose, they're convicted, then they can challenge that as part of their appeal package. And I'm trying to figure out whether there's something about this setting that would make the analysis different enough that we could entertain a challenge to that motion right off. I don't believe the district court is granted an interlocutory appeal with regards to this particular proceeding. However, I don't believe Mr. Hicks possesses any other relief other than having this motion reviewed independently in order to ascertain what direction the district court is going to go in with regards to his pending motions. So can you tell me what you think the rule recognized in Bloomer and Yonkers is with respect to our jurisdiction? Because they read it in a particular way. So with regards to the jurisdiction, I conferred with the government with regards to expounding on this particular issue. Certainly, it was my understanding that this was always an exclusive jurisdiction with regards to this particular relief. There's really nothing that I was able to find that's on point with regards to what relief is being sought given the pending motions in the district court. So you don't, I mean, I just want to be clear, do you think Bloomer and Yonkers stands for the fact that we have asserted jurisdiction over post-judgment orders when it involves recusal of the judge? Is that how you would read it? I would, Your Honor. Help me understand why this recusal motion was timed. So, Your Honor, Mr. Hicks has been incarcerated for some time. He's changed facilities. Obviously, he was a pro se litigant when he filed this motion in the district court. I believe he did a motion to amend on April 25th, 2023. In between his initial 225 motion, mail has been returned back to the district court actually twice throughout between February and August when he filed the motion to recuse. He's changed facilities three different times. So obviously, there needs to be some deference given not only he's a pro se litigant, but also he's an incarcerated individual. He was represented in trial. Correct. And so, does the record reflect how he found out about this reporting contact between the juror and the judge? I don't know when this was actually brought to Mr. Hicks' attention. This was by way of a private investigator that he retained independently and it's dated in the month of April, 2023. I don't know when there was the onset of communication between this particular juror and his private investigator. I don't necessarily know when that communication took place initially. All we have is an affidavit that's dated within that month. Right. And does the record indicate how, in any respect, how this occurred? It's arguably implausible that a juror could get into a judge's robing room without a court deputy knowing about it, without a court reporter knowing about it, without any other jurors knowing about it. I understand. There is, in his filing, there was an affidavit provided by his trial attorney at the time for his second trial that indicated that without specifying with regards to a name, there was a juror that was very upset and as the affidavit by... That's a different issue, right? Sure. But that's the only independency that you can kind of essentially corroborate with regards to what this former juror indicated. I don't have anything outside of another independent source that this transpired. One of the things that I'm interested in merit-wise is that even if some of the things that Barbarie stated that Judge O'Connor said were true, how would that necessarily raise significant doubts about his impartiality? I mean, aren't judges obligated to inform defendants about the risks of going to trial? Sure, absolutely. I'm assuming that this was explained to Mr. Hicks before, well before trial even occurred, what his sentencing exposure was. However, if you're prejudging this matter and indicating that you're going to essentially max Mr. Hicks' sentence, then this particular district court judge, our opinion is that he should not oversee any of his pending motions because he's already prejudged this particular matter and has this bias towards Mr. Hicks. But he's not the one that's determining guilt. He's not the one that's determining guilt, but with regards to the sentence and that if he goes to trial, the declaration was, if he goes to trial he will lose, already formulates a conclusion in his mind that he is in fact... If that's true, that would disqualify lots and lots and lots of presiding judges from presiding over post-trial matters. As you said, it's not at all uncommon, probably typical that judges form views with respect to the weight of the evidence and the sufficiency of the government's allegations and so forth and so on, but your client is protected from that by the jury. Well, and this keeps, and going back to, this is still an ex parte communication regarding this juror, so it's the declaration that was said by this district court judge. I know my time's up, if the panel would like me to finish. So there's no... What the assertion is by Ms. Barbrey with regards to what Judge Arcara indicated to her is this is not mundane by any means. He took a particular position that he acknowledges his guilt and this is what the sentence I'm going to correlate that with, before there was even a verdict rendered. Okay. Can you talk about the possibility or the argument that you make about the material witness in the habeas proceedings? How is that supposed to work? How do we think about that? I mean, doesn't the petition focus on juror misconduct and not judge? Well, excuse me, yes. So under, Mr. Hicks moved under 28 U.S.C. 455 B5 sub 4 with regards to Mr. Arcara would be a potential material witness, judge, yes, material witness regarding any sort of evidentiary hearing because there is a dispute of fact with regards to two individuals inside of a room. Ms. Barbrey indicates that this conversation occurred Judge Arcara, his colloquy was that, no, we've never had this conversation. I've never brought a juror into my chambers once in 35 years. So he would essentially, if this court were to grant an evidentiary hearing in the district court, Judge Arcara would have to testify and Ms. Barbrey would also have to testify with regards to the conversation occurring or lack thereof. Was this during jury deliberations? At what point in the trial was this conversation supposed to occur? The conversation with Charlene Barbrey? Yeah. So it would be before the verdict. It was after the retrial. It was, I believe, during jury deliberations. She was upset. There was a conversation between her and, I believe, other jurors. She didn't want to vote guilty with regards to the verdict. And according to Ms. Barbrey, Judge Arcara brought her in chambers and had a conversation. Wouldn't every other juror have known that? I'm saying it's just, you know, from the point of view of my experience as a trial judge, the allegations seem, I mean, obviously I wasn't there and I can't judge it, but they seem extremely implausible. Every other, every juror would have known it. The courtroom deputy would have known it. The defense lawyers would have maybe known it, depending on whether, who was there during jury deliberations. Someone would have had to bring her back to the jury room. Who was that? She couldn't. I mean, that's just not the way that world works. I understand. It's obviously a very unorthodox, you know, allegation. Absolutely. I agree. But the part that I'm stuck on is the habeas petition is about juror misconduct, which the judge wouldn't know. So I don't understand how we meet the standard of likely to be a material witness. I mean, I guess he could be a material witness if you were arguing that he was improper. But like with respect to 455, it's going to be juror misconduct. And how can you meet this threshold? Explain to me how you would meet the threshold there. Well, sure. So I'm assuming you're talking about 455B. Okay. So with regards to, because, and this is another thing I would like to address because in the decision by Judge Arcaro, this was not explicitly addressed with regards to what was in the moving papers. So if we were to say, have an evidentiary hearing, the only two, there's no independency with regards to what transpired in chambers. So we would be requesting at least a hearing to ascertain whether or not that conversation took place and what testimony would be elicited from whomever in that building at the time. It just not necessarily needs to be Judge Arcaro. It could be a U.S. Marshal. It could be perhaps even another juror. I'm not hearing the likely from you. Is that? Because there's a disparity with regards to what Judge Arcaro is claiming and what Charlene Barbrady is attested to. So there's a clear dispute of fact that would require testimony. Thank you. We'll hear from you again. Thank you. Good morning. May it please the court. My name is Tiffany Lee and I represent the United States. To Judge Parker's point, there actually is a transcript of proceedings that occurred with when the foreperson of the 2018 trial sent him down. The 2018, it's the retrial. Ms. Barbrady sat on the retrial and during the point of deliberation, she had indicated her discomfort during deliberations. So it's docket entry 520 and Judge Arcaro even refers to that. What does that reflect? It just reflects a conversation that Judge Arcaro had with Ms. Barbrady with counsel and the parties present, but outside the presence of the rest of the jury. And Ms. Barbrady was on the record. There's a transcript. There's a transcript of these proceedings. So to your point that there is contrary evidence to suggest that there was interaction between Judge Arcaro and Ms. Barbrady, but it was all on the record. It was not with counsel present. He just said, are you able to abide by your duty, your oath? Because I had told you, instructed that it might be uncomfortable and everything along those lines. And it came to a point where Ms. Barbrady says, it's not that I can't do it or that I will not follow the law. I will follow the law, but she was just very uncomfortable with the circumstances. So you're right that that's there. What we don't know is whether that is the interaction that the juror who wrote the affidavit was describing. So one possibility, and I'm guessing it's sort of the government's hypothesis, is that the juror's sort of memory is faded and that on the record proceeding that we can read the transcript of is in fact the thing she was describing and to the extent that she ascribed to the judge certain statements that aren't reflected there that she's misremembering. That's one read, but one of the things I'm struggling with is if we got to the merits on an accusal motion, we have to assume the truth of the allegations in the affidavit, especially if this is a disinterested juror. This isn't a interested party. She says no, the judge took me into chambers alone, and so it at least raises the possibility that this transcript that we're all talking about isn't in fact reflective of the thing she's talking about. I see your point, but it is the government's theory that most likely Ms. Barbrady was confused because this all... It's the government's point that we have a transcript that reflects the judge's interaction with this jury. Correct. That's why we have transcripts. So she is in effect disputing the validity of the transcript, is she not? That's what the government's position is, that there is only one interaction that the court has that we have on the record with Ms. Barbrady, and Your Honor, there are a lot of steps that we would have to take if we were to reach the merits in order to get to Ms. Barbrady's affidavit in any event, in order to assess whether or not it's legally sufficient for a motion for recusal. Right, let's assume we get through those. I think the most interesting question is the merits, right? Right, but even on the merits, Your Honor, I think the point is that any error or impropriety is solely the ex parte concept of it, to the extent that it is true, right? No, I mean, if a judge says to a juror on the record in the courtroom with other people, I told him that if he'd go to trial, he was going to get convicted and I was going to sentence him to the maximum... And the jurors in deliberations, wouldn't that poison the juror? No, it doesn't necessarily show like a 455A or 455B error, which is the posture of this recusal motion. So let's talk about the material witness then. It comes back on remand. The 2255 motion is going ahead, right? Because the only thing on appeal right now is the recusal. Correct. So the judge isn't recused. Correct. The defendant wants to bring in evidence that consistent with this affidavit, this is what happened. How does the judge adjudicate that when the substance of what happened involved the judge himself? The issue is, what is the issue? The issue is juror impropriety because part of her affidavit was saying she felt that the other jurors were pressuring her or whatever. So it cannot be speculative or conjectural, the likelihood of any impropriety that may have happened to impact that trial. There has to be something substantial. Wouldn't it poison a juror to have the judge say, I told him if he'd go to trial, he'd lose. This is a juror who's struggling with whether or not to convict. And now she's saying the judge told me. I don't think it meets the standard to the impact that you're looking for in terms of 455A or 455B where the step is really would an objective disinterested observer entertain significant doubt that justice would be done absent the recusal. And here, I don't think the statement... I'm talking about the material witness piece now. I'm trying to understand what it looks like on remand, not on remand, but in the further litigation of the 2255 motion. Yeah. And I'm saying that Judge Arcara would be well within his discretion to deny the hearing on the basis of that affidavit, assuming that affidavit even comes in in the first place, assuming the truth of it in order to... There's no fact finding. The only fact finding is the statement about misconduct that may have occurred in the jury room. So where in your brief do you discuss the on the record conference? I do not discuss it. It is highlighted in Judge Arcara's decision when he talks about decision and order that he had an on the record conversation with Charlene Barbary. And that actually appears in footnote... Footnote two. It's a long footnote, but he actually cites to certain instances in which he's had this conversation with Charlene Barbary. But there is also a threshold issue of jurisdiction. And I believe that this case... Let me be sure I understand your position that we don't have jurisdiction because of course it was received in a one page letter that we got 15 minutes ago. So let me hear what you have to say about appellate jurisdiction. So it's complicated in this case because it's post-judgment and... That's why the 15 minute time wasn't much appreciated and the brevity was not particularly helpful. Yeah. And it was to my embarrassment that I had missed the issue on jurisdiction when I was mooting this case last week with colleagues of mine and it was raised. So my apologies to the court on the brevity and everything along those lines. But there is a motion. Denial of motions to recuse are considered non-final because generally they're made earlier in the action before final judgment. But there are two instances, Bloomer and City of Yonkers, in which this court has taken the case and said, yes, it's final. Because at the post-judgment phase, this court employs a practical rather than technical construction of finality. So your review on whether or not to accept jurisdiction really looks at the case and saying, is there ill in taking this piecemeal or is our greater interest is ensuring no further delay of justice. The civil cases that you cited were cases in which there were ongoing sort of protracted proceedings that the court would be supervising rather than a discrete issue that the court would be adjudicating. Is that fair? Correct. That's fair. And then there's all the two cases which your honor mentioned, Bloomer and City of Yonkers Board of Education. Bloomer is a criminal case. There was a judgment entered. But then afterwards, there was a motion for retroactive CJA expert fees. So that's a different context than this one in which there is a pending 2255 proceeding. And the issues are interrelated here. So what this court could do is do as it in Locasio, which also involved a 2255, and wait until Judge Arcaro has decided that the 2255 and then hear that. Well, being that you're highlighting certain options we have and you have cases like Bloomberg and Yonkers, why is the conclusion, the contrary conclusion, i.e. you're reading Amara too broadly to strip us of jurisdiction, not plausible or equally meritorious or the one that we should reach? I think it's because I just feel that in this instance, like I said, it's more akin to Locasio in which jurisdiction you held, you didn't have to worry about jurisdiction because the 2255 had been decided. So here, the question is just are you going to decide the recusal separately or wait until the 2255, which would wrap the similar issues all up in one package? But I mean, it's complicated. So to the extent the government can see this court accepting jurisdiction under the theory that, under the more practical theory that under these circumstances, it's more important to decide the recusal now. Thank you. Thank you. Attorney Brennan. So just briefly, I know the government indicated there's a transcript and it's referenced in the by Judge Arcaro. I believe it's in a footnote. I have not seen the transcript. I believe Mr. Hicks is formally moved to have that provided as way of discovery for the jury transcript. However, that certainly does not indicate that there wasn't a colloquy that was achieved. It makes your client's contentions even more implausible to me because you have the same matter taken up on the record in the proper fashion with the court reporter there. And then to say that the judge would later on hear this juror by herself off the record with nobody else there pushes me into an area of serious anger, Julie. Certainly, and as I have transcripts, I understand what he is essentially doing is impeaching the transcript. I understand, Your Honor. Certainly, I know this. I've never seen, you know, this interaction, this purported interaction whatsoever between a district court judge and a juror. However, there are certain things that certainly corroborate, at least with regards to her state of mind. You know, the court is indicating, you know, there was a conversation that took place. She was vocal with regards to her being upset, distraught. That happens all the time. This is, you know, for jurors, for some, for many jurors, this process, you know, it's different from anything they've ever gone through. It's emotional. I mean, you deal with that all the time in trials. I mean, it's common. I understand. I know my time is up. I can just, with regards to that, the four corners of the affidavit. You mentioned you didn't have, hadn't seen the transcript. You have access to the district court docket, right? I have access to the district court docket. Okay, it's docket 520. Oh, my apologies. No, I'm not the attorney of record, but however, if it's unsealed, then yes, I certainly would, but I just want to make it not attached in the decision that was just referenced. I have not actually seen the transcript. So, and I'm back on 455B because I just want to, again, give you the opportunity to explain why you think it is likely that Judge Elgato would have to be a material witness in deciding whether there was any merits to the habeas claim as to what happened between Ms. Barbary and the jurors. Like, I understand that there might be an issue with respect to 455A as to whether or not any statement might make it, but for 455B, how are you meeting the likelihood standard as between him having to describe what happened behind closed doors with jurors? Well, just, and I don't want to be redundant, but with regards to this interaction, it is just two individuals that she's claiming that existed in chambers at that period of time. There wasn't a court reporter or deputy. She doesn't reference any sort of other individual other than the district court judge himself and her. So, with regards to that, there's obviously a issue regarding a factual basis between the district court's assertion and then Ms. Barbary's. No, there's not. Why aren't we entitled to rely on the transcript? Oh, Judge, I'm... Of who was there and what was said. That we should or shouldn't rely on the transcript. That's why we have transcripts. So, we have a record of what the proceeding was, and the transcripts reflect who's there. It doesn't... And so, here we have a litigant coming back and talking about an interaction with a judge that's not supported by the record of the transcript. But it also doesn't necessarily indicate that that conversation never occurred. And this is also an individual... If a litigant could come back and say, even though the transcript reflects court reporter, counsel, courtroom deputy, etc., etc., my recollection is that no one was there except me and the judge. I mean, that's not how this process works. That's why we have court reporters. I understand. And if a court reporter could... If the veracity of what the court reporter takes down could be contradicted in an ex parte, I mean, in an affidavit after the fact, we wouldn't get any work done. It's a little different in this scenario, Judge, because she's making particular assertions with regards to where the conversation took place... In the chambers, right? In chambers and the range of years with regards to what was sentencing exposure. And also, keep in mind too, she's signing this under the penalty of perjury. So, of course, this individual wanted to be vocal, was, and wanted to indicate, at least to Mr. Hicks' private investigator, what exactly transpired. I don't believe it's according to the government that it's a fiction of her imagination based on a conversation on the record. It's just too particular, Your Honor. Thank you. Thank you very much. Appreciate your argument. Appreciate your argument. We'll take it under advisement. Your Honor, would you like supplemental briefing on the jurisdictional issue or not? I mean, the first thing you're supposed to look at when you're coming into this court is there appellate jurisdiction. That shouldn't be the last thing. Understood. I think that you've had an opportunity to give us your best shot in your 28-J letter. I don't know that you've had an opportunity to respond. Oh, actually, you did respond. So, unless one of my colleagues wants supplemental briefing, I think we're not going to request any. Thank you. Thank you. Thank you.